Deborah R. Rosenthal (# 184241)
drosenthal@simmonsfirm.com
**Simmons Hanly Conroy LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (415) 536-3986

Gregory F. Coleman
(pro hac vice to be submitted)
greg@gregcolemanlaw.com
**Greg Coleman Law PC**
First Tennessee Plaza
800 S. gay Street, Suite 1100
Knoxville, TN 37929
Phone:  (865) 247-0080

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN FONG, on behalf of himself And all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> TOYOTA MOTOR SALES, U.S.A., INC. a California Corporation and TOYOTA MOTOR CORPORATION, a Foreign Corporation, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

Plaintiff Kevin Fong ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this Class Action Complaint against Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Company, ("Defendants" or "Toyota.") and upon Plaintiff's own

1

acts and experiences, information and belief, and investigation of counsel, states as follows:

## I.  JURISDICTION AND VENUE

1.       This Court has original jurisdiction over this action under 28 U.S.C. section 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members in this matter exceeds the sum or value of $5,000,000 exclusive of interest and costs, because Plaintiff and Defendants are residents of different states, and there are at least one hundred members of the proposed classes.

2.       Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because Plaintiff suffered injuries as a result of Defendant's acts in this District, a substantial number of the events giving rise to this Complaint occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District by conducting business in this District; and (2) are subject to personal jurisdiction in this District.

3.       Subject-matter jurisdiction also arises under Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, et seq.

## II.  PARTIES

4.       Kevin Fong is a resident of Sacramento, California, located in Sacramento County.

5.       Toyota Motor Sales, U.S.A., Inc. ("Toyota Motor") is a California corporation with its principal place of business located, as of September, 9, 2016, at 19001 South Western Avenue, Torrance, California 90501.

6.       Toyota Motor has located, or is in the process of locating, its principal place of business to 7910 Legacy Drive, Plano, Texas, 75024.

7.       Toyota Motor through its various entities designs, manufactures, markets, distributes, and sells Toyota automobiles in California and multiple other locations in the United States and worldwide. Toyota Motor and/or its agents designed, manufactured, and installed the

panoramic sunroofs in the vehicles at issue in this case. Toyota Motor also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the vehicles at issue in this case.

8.    Defendant Toyota Motor Corporation ("Toyota Global") is a Japanese corporation headquartered in Toyota City, Aichi, Japan.

9.    Toyota Global is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the vehicles at issue in this case, in the United States.

10.    Toyota Global is and was at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within the Central District of California in the State of California by selling, advertising, promoting, and distributing Toyota motor vehicles.

11.    Through its wholly-owned subsidiaries and/or agents, Toyota Global markets its products in a continuous manner in the United States, including in the State of California.

12.    Toyota Global is the parent of, controls, and communicates with Toyota Motor concerning virtually all aspects of the Toyota vehicles distributed in the United States.

13.    Toyota Motor acts as the sole distributor for Toyota vehicles in the United States, purchasing those vehicles from Toyota Global for sale in this country.

14.    Toyota Global also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the vehicles at issue in this case.

15.    The relationship between Toyota Global and Toyota Motor is governed by a General Distributor Agreement that gives Toyota Global the right to control nearly every aspect

COMPLAINT

of Toyota Motor's operations—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

16.     Toyota Global owns 100% of the capital share in Toyota Motor.[1]

### III.  NATURE OF THE CASE

17.     Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats.

18.     Starting in the mid-2000s, automobile manufacturers expanded sunroofs in size so that now these sunroofs (i.e., sheet(s) of glass) account for nearly the entire roof of the vehicle. These expanded sunroofs are often referred to as "panoramic."

19.     While panoramic sunroofs are aesthetically pleasing, and thus command a premium price, they also pose new and significant engineering challenges. Replacing metal roofs and small glass sunroofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

20.     Like other manufacturers, Toyota has failed to meet these engineering challenges, as is evidenced by its own panoramic sunroofs' propensity to spontaneously shatter (referred to herein as "the Defect"). Unlike several manufacturers that have issued safety recalls, Toyota has not recalled its defective panoramic sunroofs.

21.     The shattering events are so powerful that startled drivers compare it to the sound of a gunshot, after which glass fragments often rain down upon the occupants of the vehicle, sometimes while driving at highway speeds.

22.     For Toyota vehicles, at least 80 owners of vehicles with defective sunroofs have reported to the National Highway Traffic and Safety Administration ("NHTSA") that their

---

[1]   Toyota Motor Corporation 2015 Annual Report, Form 20-F, p. 51

COMPLAINT

sunroofs have spontaneously exploded or shattered. A sampling of these consumer complaints is attached in Exhibit 1 (these consumer complaints were accessed at http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues on August 22, 2017).

23.     Toyota knew or should have known about the Defect since at least 2008 when a NHTSA complaint was filed regarding the Defect in the Toyota Highlander.  *See* Exhibit 1.

24.     On or before May 12, 2014, Toyota knew or should have known about the Defect because NHTSA opened an investigation of Kia Motor Company vehicles whose panoramic sunroofs were exhibiting the same defect (https://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM455160/INOA-EA14002-1938.PDF, accessed on June 15, 2017).

25.     On April 14, 2016, NHTSA expanded its investigation inquiries as to Toyota and other manufacturers regarding the Defect. *See* Exhibit 2 (Nat'l Highway Traffic Safety Admin., *EA12-002: General Order Directed to Motor Vehicle Manufactures* (April 14, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM514031/INLM-EA14002-63477.pdf (accessed on June 15, 2017)).  Toyota's responses are not yet available on the NHTSA website.  The investigation remains open.

26.     Despite knowing of the Defect, Toyota refuses to warn drivers of the danger and continues to sell and lease the vehicles with defective panoramic sunroofs without disclosing the Defect to consumers.

27.     Plaintiff seeks relief for himself and a class of all other consumers who purchased or leased Toyota vehicles with panoramic sunroofs, or in the alternative all California consumers, to redress the harm they suffered as a result of the Defect.  Plaintiff requests an award of damages and appropriate equitable relief, including an order enjoining Toyota from continuing to sell vehicles with the Defect and requiring Toyota to adequately disclose the Defect to current Toyota

owners and repair their vehicles.

## III.  SUBSTANTIVE ALLEGATIONS

**A.     The Toyota Panoramic Sunroof Defect**

28.     Toyota designs, manufactures, markets, and distributes automobiles in the United States under the Toyota brand name. The Toyota automobile models that are the subject of this complaint (including Electric and Hybrid Models) are: the Toyota 4Runner 2016-present, Toyota Avalon 2003-present; Toyota Camry 2004-present, Toyota Corolla 2007-present, Toyota FJ Cruiser 2007-2014, Toyota Highlander 2008-present, Toyota Matrix 2005-2013, Toyota Prius 2010-present, Toyota Rav4 2009-present, Toyota Scion 2013-2016, Toyota Sequoia 2003-present, Toyota Sienna 2004-present; Toyota Tundra 2004-present, Toyota Venza 2009-2015, and Toyota Yaris 2012-present with factory-installed panoramic sunroofs (collectively "Class Vehicles"). Plaintiffs anticipate amending the definition of the Class Vehicles when Toyota identifies in discovery all of the vehicles it manufactured and sold with the optional panoramic sunroof.

29.     Owners and lessees of Class Vehicles are referred to as "Class Members" or "the Class."

30.     Starting in at least the 2003 model year, Toyota introduced vehicles with an optional upgrade of a factory-installed panoramic sunroof. The panoramic sunroof designs in all of the Class Vehicles are substantially similar in design and manufacture.

31.     Toyota generally markets the panoramic sunroofs as a luxury upgrade, available even in its lower-end cars like the Highlander.[2]  The cost to upgrade the sunroof, depending upon the vehicle model, ranges from over one thousand to several thousand dollars. The actual material

---

[2]  Bell, Lyndon. "Affordable SUVs with Panoramic Sunroofs."*Autobytel*, www.autobytel.com/sport-utility-vehicles/car-buying-guides/-affordable-suvs-with-panoramic-sunroofs-130635/.  This website was last visited on August 7, 2017.

cost of the panoramic sunroofs is relatively low, making the option one of the most profitable features in the automotive industry.

32.    The Toyota brochure for the 2014 Toyota Highlander describes its "Panoramic Moonroof" as in-seat entertainment for everyone:



**PANORAMIC MOONROOF**
In-seat entertainment for everyone. Your passengers have the whole sky to entertain them thanks to the available panoramic moonroof.

33.    Panoramic sunroofs are made of tempered or laminated glass that attaches to

tracks, which in turn are set within a frame attached to the vehicle. Most panoramic sunroofs, including those offered by Toyota, include a retractable sunshade. Examples of panoramic sunroofs appear in the photographs below.

**2014 Toyota Highlander Sunroof**[3]



[3] Timmis, Ben. "2014 Toyota Highlander First Look." *Automobile Magazine* March 27, 2013 www.automobilemag.com/news/2014-toyota-highlander/.  This website was last visited on August 7, 2017.

**2010 Toyota Venza AWD V6 4dr Crossover Panoramic Sunroof**[4]



**2012 Toyota Camry XLE Panoramic Sunroof**[5]



34.    Panoramic sunroofs present manufacturing, design, and safety challenges for manufacturers because the large plates of glass take up much of the surface area of the vehicle's

[4] http://www.star7as.com/2010_Toyota_Venza_Muskegon_MI_9711322.veh. This website was last visited on August 7, 2017.
[5] http://www.wendellautobrokers.com/310_V20170110150721/Wendell/2012-TOYOTA-CAMRY-XLE-for-sale. This website was last visited on August 7, 2017.

COMPLAINT

roof. The Design and Manufacturing defects described herein with respect to the Toyota panoramic sunroofs outline how the shattering occurs in ways that are unknown and dangerous to the driver and occupants.

35.    One particular challenge is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Toyota, Mercedes, Nissan, Kia, Hyundai, and Volkswagen, have opted to install panoramic sunroofs with *tempered* glass that feature large areas of ceramic paint.

36.    In the automotive industry, tempered or toughened glass is generally made in the same manner by all manufacturers: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, i.e., tempered. The tempering process creates an outer layer of glass that is compressed (similar to being shrink-wrapped) around a middle core of the glass that is constantly pressing outwards creating tension or tensile force. The compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. However, if the compressive layer is compromised the entire piece of glass fails catastrophically and often explosively.

37.    Problems with panoramic sunroofs are compounded by Toyota's use of thinner glass. Car makers use thinner glass in panoramic sunroofs to save weight and improve vehicle fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4 mm or less) as the compressive layers are thinner, increasing the probability of catastrophic failure.

38.    Additionally, the tempered glass used in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting point glass frit, pigments, and other additive oxides, sulfides, or metals.

After application of the ceramic enamel, the glass is then tempered, as described above. These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint area appears as a "black band" along the edge of the glass.

39.    Ceramic enamels are known "adulterants" and significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

40.    The ceramic paint area is relatively small in conventional sunroofs, but ceramic paint areas have become larger with the advent of panoramic sunroofs resulting in the glass becoming progressively weaker, more likely to spontaneously burst and, for the unsuspecting driver and passengers, more dangerous.

41.    In 2013, the Korea Automobile Testing & Research Institute ("KATRI") concluded that the enamel used for ceramic paint areas in panoramic sunroofs like those installed in Ford vehicles impairs the strength of the glass, making it not only less durable than the usual toughened glass, but also less durable than ordinary glass. For an example of these findings, see Lee Kwang-bum, et al., *A Study On Toughened Glass Used For Vehicles And Its Testing Methods,* No. 15-0152 available at https://www-esv.nhtsa.dot.gov/Proceedings/24/files/24ESV-000152.PDF (accessed on June 15, 2015).

42.    Following KATRI's report, an Informal Working Group on Panoramic Sunroof

Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs. The Working Group is chaired by a representative from KATRI and is considering whether to amend the UN regulations on safety glazing. At the end of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing. This working group's findings and regulatory recommendations are available at https://globalautoregs.com/groups/93.

43.     Another challenge presented by the panoramic sunroofs is the need to ensure the sunroof glass is fastened to the vehicle with a sufficient degree of tightness. Toyota and other manufacturers fasten the sunroof in a manner that reduces road and wind noise, and makes them less susceptible to rainwater incursion. At the same time though, flexing and vibration caused by ordinary driving imposes stress on the sunroof, ultimately causing the glass to shatter. In the Toyota models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle is brand new or is parked and sitting still.

**B.    Consumer Complaints Reveal the Magnitude and Seriousness of the Defect**

44.     Below are just a few examples of the numerous complaints regarding Toyota sunroofs lodged with NHTSA. (*See also* Exhibit 1.) Few, if any, of the drivers who filed reports with the federal government reported that their panoramic sunroof shattered because of an object striking their vehicle. In contrast, many of the drivers report that their panoramic sunroofs spontaneously shattered while the vehicle was in motion. The complaints are viewable online at https://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues (accessed on August 22, 2017).[6]

Date Complaint Filed:  07/27/2017
Date of Incident:  07/06/2017

---

[6] These customer complaint summaries are reproduced verbatim, and not corrected for any grammar, spelling, or punctuation errors included in the original consumer description.  .

Vehicle Make Model Year(s): Toyota Highlander 2010

**Summary:** EXPLODED WHILE DRIVING 70 MPH ON INTERSTATE 44. SOUND RESEMBLED GUNSHOT. NO EXTREME TEMPERATURES. NO PROJECTILES. OVERREACTION COULD HAVE CAUSED ACCIDENT. CAUSE OF NOISE UNKNOWN UNTIL ABLE TO PULL OVER TO ROADSIDE. IF INTERIOR SHIELD HAD BEEN OPEN, SHARP GLASS PARTICLES WOULD HAVE SHOWERED OVER OCCUPANTS. INTERNET REVIEW DISCLOSES MANY SIMILAR EXPLODING SUNROOFS ON MANY MODELS AND BRANDS.
[NHTSA ID Number:  11011155]

Date Complaint Filed:  03/27/2017
Date of Incident:  03/27/2017
Vehicle Make Model Year(s): Toyota Venza 2013

**Summary:** ON 03-27-2017 APPROXIMATELY 2:15P I WAS TRAVELING 60 MPH SOUTH ON I94/I43 IN MY 2013 TOYOTA VENZA XLE JUST SOUTH OF THE BECHER/LAPHAM AVE EXIT IN MY WHEN I HEARD THIS LOUD EXPLOSION WHICH RESEMBLED A GUNSHOT SOUND AT THE SAME TIME FLYING GLASS COMING FROM OVER MY HEAD. MY SUNROOF IMPLODED ON TOP OF ME AND THERE WAS SHATTERED GLASS INSIDE AND OUTSIDE FLYING BEHIND ME AS I LOOKED INSIDE MY REAR VIEW MIRROR. I THOUGH I WAS SHOT AT OR EVEN A ROCK WAS THROWN. I DROVE TO THE NEAREST DEALERSHIP AND WAS TOLD BY THE SERVICE MANAGER THAT HE HAS NEVER HEARD OR SEEN THIS WITH ANY TOYOTAS. I CALLED THE MILWAUKEE COUNTY SHERIFFS OFFICE TO INVESTIGATE THE INCIDENT AND TAKE A REPORT FOR MY INSURANCE. THERE WAS NO ROCKS OR BULLETS FOUND IN OR AROUND THE SUNROOF TO HAVE CAUSED THE SHATTERING OF BOTH SECTIONS OF GLASS. ON 03-28-2017, I CONTACTED THE DEALERSHIP I PURCHASED THE VEHICLE FROM (WILD TOYOTA HALES CORNERS WI) AND WAS TOLD THAT MY CAR WAS NO LONGER UNDER WARRANTY AND THAT I SHOULD CONTACT HEADQUARTERS. I WAS TOLD THAT SINCE MY VEHICLE WAS 2K MILES OVER THE WARRANTY THEY WOULD NOT COVER IT BUT I WOULD GET A CALL FROM THE REGIONAL TOYOTA REPRESENTATIVE AND THEY WOULD TRY TO WORK WITH ME?? I GOOGLED TOYOTA EXPLODING SUNROOFS AND FOUND THAT THIS IS A COMMON PROBLEM WITH NOT JUST TOYOTA BUT MANY CAR MANUFACTURERS.. AT POINT DOES THE GOVERNMENT GET INVOLVED AND SHUT DOWN THE MAKER OF THESES SUNROOFS. I COULD HAVE KILLED MYSELF OR SOMEONE ELSE WITH THIS INCIDENT AND FOR THE MANUFACTURER TO DISMISS THIS AS A WARRANTY ISSUE AND NOT A SAFETY CONCERN IS RIDICULOUS!
[NHTSA ID Number:  10968946]

Date Complaint Filed: 12/13/2016
Date of Incident:  12/13/2016
Vehicle Make Model Year(s): Toyota Prius 2013

**Summary:** MY SUNROOF SPONTANEOUSLY EXPLODED OUTWARDS WHEN DRIVING ON THE FREEWAY. I DID NOT HIT ANYTHING. NO OBJECTS HIT ME OR THE SUNROOF. THERE WERE NO OTHER CARS NEAR ME. I WAS NOT AROUND ANY OVERPASSES. THE SUNROOF JUST EXPLODED AND THE GLASS SHARDS ARE POINTING OUTWARDS TOWARDS THE SKY. *TR
[NHTSA ID Number:  10935165]

Date Complaint Filed: 07/29/2015
Date of Incident:  07/22/2015
Vehicle Make Model Year(s): Toyota Sienna 2007

**Summary:** DRIVING DOWN ROAD, HEARD LOUD POP, THEN SOUNDED LIKE WIND RUSTLING. STOPPED AT GAS STATION AND NOTICED THE SUNROOF HAD SHATTERED. LUCKILY, THE INSULATION PANEL WAS CLOSED AND KEPT GLASS FROM FALLING ON DRIVER AND PASSENGERS. NOTHING OUT OF THE ORDINARY HAD HAPPENED LEADING UP TO THIS EVENT. IT WAS A CLEAR, WARM DAY.

13

[NHTSA ID Number:  10744723]

Date Complaint Filed:  03/14/2008
Date of Incident:  12/21/2007
Vehicle Make Model Year(s): Toyota Highlander 2008

**Summary:**  WHILE DRIVING ON HIGHWAY THE SUNROOF EXPLODED AND SENT GLASS FRAGMENT EVERYWHERE. FORTUNATELY THE SHADE WAS PULLED CLOSED OTHERWISE GLASS WOULD HAVE BEEN BLOWN INTO THE DRIVER AND PASSENGER COMPARTMENT AT 55 MPH. GLASS WAS COMPLETELY DISTRIBUTED THROUGHOUT THE HEADLINER AND IT HAD TO BE REMOVED TO ENSURE GLASS WOULD NOT INTERFERE WITH AIR BAG OPERATION OR BECOME A PROJECTILE IF THE AIR BAG ACTUATED. THE SUNROOF IS MADE OF TEMPERED GLASS AND NOT SAFETY GLASS. WHEN IT EXPLODED, THE GLASS WAS NOT HELD CAPTIVE BY THE SAFETY FILM. ONLY A TWO INCH BORDER OF GLASS REMAINED IN THE SUN ROOF FRAME. THIS IS A VERY SIGNIFICANT SAFETY OVERSIGHT. IF THE SUN ROOF SHADE HAD BEEN OPEN, THE DRIVER WOULD HAVE BEEN HIT WITH GLASS AND AN ACCIDENT WOULD LIKELY HAVE OCCURRED. *TR

[NHTSA ID Number:  10221208]

Date Complaint Filed:  01/22/2009
Date of Incident:  10/17/2008
Vehicle Make Model Year(s): Toyota Camry 2007

**Summary:**  DRIVING DOWN THE INTERSTATE AT ABOUT 65 MPH. SUNROOF EXPLODED OUT. GLASS WENT ALL OVER MY HUSBAND, ALMOST CAUSING A WRECK AS HE WAS IN RUSH HOUR TRAFFIC. TOOK THE CAMRY TO DEALERSHIP (AFTER TAKING PICS), THEY COMMENTED "OH, WE'VE SEEN THIS BEFORE." FIXED THE SUNROOF, AND CHARGED $1000. THIS IS DANGEROUS. NOTHING HIT THE WINDOW, OR IT WOULD HAVE SHATTERED IN INSTEAD OF EXPLODING OUT. MAYBE SOMETHING TO DO WITH THE PRESSURE IN THE CAR. *TR

[NHTSA ID Number:  10255970]

Date Complaint Filed: 11/30/2009
Date of Incident:  11/29/2009
Vehicle Make Model Year(s): Toyota Sienna 2004

**Summary:** TL* THE CONTACT OWNS A 2004 TOYOTA SIENNA. WHILE DRIVING 50 MPH SHE HEARD AN EXTREMELY LOUD NOISE COMING FROM THE ROOF OF THE VEHICLE. SHE PULLED OVER AND DISCOVERED THE NOISE SHE HAD HEARD WAS THE SUNROOF WHICH HAD VIOLENTLY EXPLODED. A TEMPORARY REPAIR WAS MADE TO THE VEHICLE. THE VEHICLE WAS IN THE PROCESS OF BEING TAKEN TO AN AUTHORIZED DEALER FOR REPAIR. THE FAILURE MILEAGE WAS 124,949. THE CURRENT MILEAGE WAS 125,249. UPDATED 01/25/10 *BF THE REPAIRS WERE PAID FOR THROUGH THE CONSUMERS INSURANCE COMPANY. THE REPAIR TECHNICIAN NOTED THAT THERE WAS NO EVIDENCE OF ANY FOREIGN OBJECT HAVING IMPACTED THE GLASS. NO FURTHER PROBLEMS SINCE THE REPAIR. UPDATED 01/26/10.*JB

[NHTSA ID Number:  10293994]

Date Complaint Filed: 08/07/2012
Date of Incident: 08/05/2012
Vehicle Make Model Year(s): Toyota Rav4

**Summary:** I WAS AT A STOP SIGN AND TURNING RIGHT WITH MY GRANDSON IN THE BACKSEAT, I HEARD A LOUD NOISE NO OTHER CAR AROUND ME AT THE TIME PULLED OVER AND LOOKED ALL AROUND THE CAR AND IN THE BACK TO SEE IF SOMETHING FELL OVER NOTHING WAS IN THE BACK. STARTED DRIVING AGAIN AND HEARD WIND NOISE PULLED OVER AGAIN AND LOOKED ALL UNDER RAV AND TIRES GOT READY TO

14
COMPLAINT

GET IN SIDE LOOKED UP ON THE TOP AND THE SUNROOF HAD A HOLE IN IT AND SHATTERED. NOTHING HIT IT JUST SHATTERED. IF HAD HAD THE INSIDE OPEN GLASS WOULD HAVE BEEN ALL INSIDE THE VEHICLE. TOYOTA SAID NOT IN WARRANTY AND THE EXTENDED WARRANTY PURCHASED DID NOT COVER EITHER, HAD TO FILE INSURANCE CLAIM. WAS NEVER ADVISED WHEN PURCHASED THAT THE SUNROOF COULD JUST EXPLODE AND SHATTER FOR NO REASON. NOW HAVE A VEHICLE THAT I WILL NOT EVER OPEN THE INSIDE DOOR FOR THE SUNROOF AGAIN IF WOULD SHATTER WHILE OPEN WOULD GET GLASS ALL OVER EVERYONE. THANK GOODNESS WAS ONLY GOING ABOUT 20 MILES HOUR AND THE INSIDE SUNROOF DOOR CLOSED WHEN HAPPENED. IF HAD BEEN GOING 65 MILES HOUR AND HAD THE SUNROOF INSIDE DOOR OPEN COULD HAVE CAUSED WRECK. *TR

[NHTSA ID Number: 10469558]

Date Complaint Filed: 04/25/2013
Date of Incident: 04/25/2013
Vehicle Make Model Year(s): Toyota Venza 2010

**Summary:** WHILE ENTERING THE INTERSTATE I WAS APPROACHING ABOUT 60 MPH WHEN ALL OF A SUDDEN I HEAR A VERY LOUD POP! I WAS STARTLED THINKING SOMEONE HAD SHOT A GUN! IT CAUSED ME TO SLOW DOWN AND TO ALMOST BE REAR ENDED. I LOOKED UP TO FIND MY SUNROOF HAD EXPLODED FOR NO APPARENT REASON. *TR

[NHTSA ID Number: 10509615]

Date Complaint Filed: 10/07/2016
Date of Incident: 10/07/2016
Vehicle Make Model Year(s): Toyota Camry 2016

**Summary:** I WAS DRIVING DOWN THE INTERSTATE AND MY SUNROOF EXPLODED FROM THE INSIDE OUT. NOTHING HIT THE CAR AT ALL TO CAUSE THIS.

[NHTSA ID Number: 10914527]

C.      **Toyota's Knowledge of the Defect**

45.     A survey of driver complaints shows that Toyota sunroofs often shatter within weeks or months of purchase, and NHTSA was informed of this problem in Toyota vehicles as early as 2008. *See* Exhibit 1.

46.     Like other automobile manufacturers, Toyota monitors NHTSA for information on emerging problems with its vehicles.

47.     On or before May 12, 2014, NHTSA opened an investigation of the panoramic sunroofs failures, initially focused on 2011-2013 Kia Sorento panoramic sunroofs. *See* Nat'l Highway Traffic and Safety Admin., U.S. Dep't of Transp., Office of Defects Investigation: No. EA 14-002 (Opened: 05/12/2014), https://www-odi.nhtsa.dot.gov/owners/ SearchResults;jsessionid=1TZpY0HQcwJvFCWzP6l6GkpnLFsLJbB0Qv4TY1TTLLjYyCX3

WbP1052099763 (accessed on June 15, 2017). The investigation was soon expanded to other vehicle manufacturers, including Toyota.

48.    As part of NHTSA's open investigation into the panoramic sunroof shattering safety issue, on April 14, 2016, NHTSA sent a letter to Toyota requesting information about its vehicles with panoramic sunroofs, requesting Toyota identify all Toyota panoramic roofs and complaints of shattered roofs for model years 2006-2016. *See* Exhibit 2.

49.    The response from Toyota was due on May 16, 2016, but has not yet been posted on the NHTSA website.

50.    Upon information and belief, Toyota is also aware that other manufacturers whose vehicles suffered from similar shattering problems have voluntarily initiated safety recalls to notify drivers of the danger and repair the sunroofs free of cost.

**D.    The Dangers Posed to Class Occupants**

51.    NHTSA, KATRI, and responsible automobile manufacturers have acknowledged that the spontaneous failure of panoramic sunroofs endangers drivers, passengers, and others on the road. A panoramic sunroof is an expensive upgrade option that costs thousands of dollars to replace. A reasonable person considering whether to purchase or lease a Toyota vehicle would want to be informed about the panoramic sunroof defect before deciding whether to spend the additional money.

52.    When panoramic sunroofs shatter because of the defect while the Class Vehicles are occupied, occupants report a sudden, unexpected and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have injured them, their passengers and have caused damage to their Class Vehicles. Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted

because the sunroof shattered while the vehicle was in motion. Both Toyota and NHTSA have received reports of injuries caused by sunroof failure. *See* Exhibit 1.

53. Other manufacturers recognize the safety risk. When Volkswagen initiated a safety recall for shattering panoramic sunroofs, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause the driver distraction, increasing the risk of a crash." *See* Press Release, Volkswagen of America, Inc., *Volkswagen Issues Voluntary Recall* (Dec. 7, 2014), http://media.vw.com/release/856/ (accessed on June 15, 2017).

54. When Hyundai initiated is recall, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including by posing a risk of injury to vehicle occupants. In connection with the Hyundai recall, NHTSA wrote that the breaking of the panoramic sunroof could lead "to personal injury or a vehicle crash." *See* Letter from Robert Babcock, Hyundai America Technical Center, Inc. (HATCI)'s Director of Certification and Compliance Affairs, to Nancy Lewis, Associate Administrator for Enforcement at the NHTSA, regarding "Defect Information Report" (December 6, 2012), https://static.nhtsa.gov/ odi/rcl/2012/RCDNN-12V568-7763.pdf?_ga=1.68163031.711047123.1487811501 (accessed on June 15, 2015).

55. In connection with an Audi recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

56. KATRI concluded that the sudden shattering of a panoramic sunroof while driving may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

57. In December of 2012, KATRI launched an investigation that culminated in

November 2013 when it met with numerous car manufacturers in Seoul, South Korea, announcing its finding that the ceramic tint in panoramic sunroofs substantially weakened the glass and compromising its safety. KATRI recommended widespread recalls—a recommendation unheeded by Toyota.

**E. Toyota Refuses to Warn Drivers**

58. Despite the high number of complaints and the danger posed by the defect, Toyota continues to conceal its existence from current and potential customers alike. Toyota has not warned consumers at the point of sale/lease or when drivers who have experienced a shattered sunroof bring their vehicles in for repairs, making no effort to alert consumers of the risk. Toyota knows of the defect yet continues to profit from the sale and lease of Class Vehicles to unwitting customers.

59. Toyota conceals the defect even though it knows it is not reasonably discoverable by consumers unless they experience a failure and are exposed to the attendant safety risks.

60. Toyota remains silent even as it continues to receive complaints from concerned drivers and the NHTSA investigators.

61. As a result of Toyota's inaction and silence, consumers are unaware that they purchased or leased a Class Vehicle which has a defective sunroof, and continue to drive these unsafe Class Vehicles. In addition, consumers who have experienced a failure and bring their Class Vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their Class Vehicles.

62. Other manufacturers who have had vehicles with similar panoramic sunroof problems—such as Audi and Volkswagen—have voluntarily initiated safety recalls as a result, notifying drivers of the danger and offering to repair the sunroofs free of cost.

**F.    Toyota's Deceptive Warranty Practices**

63.    The relevant terms of the Toyota brand Class Vehicles' warranties are substantially the same: they are backed by a comprehensive warranty that lasts for three years or 60,000 miles, whichever comes first, and five-year/60,000 mile powertrain coverage.

64.    Plaintiff and/or Class Members experienced damage from the Defect within the warranty periods of their vehicles. Plaintiff and/or Class Members reasonably expected that any and all damage that resulted from the sunroof defect would be covered under the warranty, and that they would not be charged anything for such repairs.

65.    Toyota has systematically denied coverage with respect to the defective sunroofs. Plaintiff and Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

## V.  PLAINTIFF'S EXPERIENCES

66.    In December of 2016, Plaintiff Kevin Fong purchased a pre-owned 2013 Toyota Venza from Infiniti Roseville in Roseville, California for the purchase price of $22,000. Plaintiff's vehicle included Toyota's panoramic glass roof with front sunroof.

67.    Prior to buying his Venza, Plaintiff did extensive research for a used car that would meet requirements for safety, reliability, space and budget. Plaintiff specifically wanted a vehicle that was roomy and had good gas mileage.

68.    The panoramic sunroof feature on the Venza was a huge selling point for Mr. Fong.

69.    At approximately 5:15 p.m. on June 20, 2017, Mr. Fong was driving the Toyota with his wife in the passenger seat and 11 month-old daughter in a rear-facing car seat in the middle of the second row of seats. It was a sunny afternoon and they were traveling around 45 mph as

COMPLAINT

they accelerated onto the Northbound Interstate 5 onramp from Cosumnes River Boulevard in Sacramento, California. No other vehicles were traveling on the onramp. The family had been driving for about five minutes when they heard a loud boom. Mr. Fong initially thought a tire on the car had ruptured, but dismissed that idea when he felt no vibrations in the steering wheel. He then thought the sound might have come from a water bottle that exploded somewhere in the vehicle due to the 107 degree F heat. As Mr. Fong pulled over to check he heard a crackling, crinkling sound. As he exited the vehicle, he noticed the glass on the sunroof had shattered and looked as if it had exploded outward. Fortunately the visor had been closed so no glass fell onto his daughter who was directly below the sunroof.

70.    Below are photographs of the shattered sunroof in Mr. Fong's 2013 Venza.





71.    Mr. Fong searched online to see if there were any active recalls on his vehicle and found none. He called a Toyota dealership to inquire about fixing the broken glass. He was

informed the repairs were not covered under warranty and would cost him about $1,250, five times his insurance deductible. He then called Mercury Insurance and filed a claim.

72.    Mr. Fong needed to rent a vehicle for the time the sunroof was being repaired at a cost of $300. He paid his insurance deductible of $250 for the repairs. He also missed nine hours of work causing him to forego $315 of income.

73.    Had Toyota disclosed the panoramic sunroof defect, Mr. Fong would not have purchased the vehicle or would have paid substantially less for it given the safety defect. In addition, he would not have suffered the economic damages that he sustained from the sunroof failure. Mr. Fong did not receive the benefit of the bargain. Toyota failed to disclose the Defect and the attendant risks associated with the Defect at the point of sale or otherwise.

## VI.  CLASS ACTION ALLEGATIONS

74.    Pursuant to Fed. R. Civ. P. 23, Plaintiff Ken Fong brings this action individually and on behalf of all others similarly situated as members of the following proposed Nationwide and California classes (collectively, the "Classes"), on their federal and state claims as purchasers and lessees of "Class Vehicles." Class Vehicles include all models below that are equipped with factory-installed panoramic sunroofs that share a substantially similar design and manufacturing process:

1. 2016-present model year Toyota 4Runner vehicles;

2. 2003-present model year Toyota Avalon vehicles;

3. 2004-present model year Toyota Camry vehicles;

4. 2007-present model year Toyota Corolla vehicles;

5. 2007-2014 model year Toyota FJ Cruiser vehicles;

6. 2008-present model year Toyota Highlander vehicles;

7.   2005-2013 model year Toyota Matrix vehicles;

8.   2010-present model year Toyota Prius vehicles;

9.   2009-present model year Toyota Rav4 vehicles;

10. 2013-2016 model year Toyota Scion vehicles;

11. 2003-present model year Toyota Sequoia vehicles;

12. 2004-present model year Toyota Sienna vehicles;

13. 2004-present model year Toyota Tundra vehicles;

14. 2009-2015 model year Toyota Venza vehicles; and

15. 2012-present model year Toyota Yaris vehicles.

Nationwide Class:

All persons and entities residing in the United States, including its territories,
who purchased or leased a Class Vehicle.

California Class:

All persons and entities residing in California who purchased or leased a Class
Vehicle in California.

Excluded from the proposed classes are Toyota; any affiliate, parent, or subsidiary of Toyota; any

entity in which Toyota has a controlling interest; any officer, director, or employee of Toyota; any

successor or assign of Toyota; anyone employed by counsel in this action; any judge to whom this

case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased the

Class Vehicle for the purpose of resale.

75.     Members of the proposed classes are readily ascertainable because the class

definitions are based upon objective criteria.

76.     Numerosity. Toyota sold many thousands of Class Vehicles, including a substantial

number in California. Members of the proposed classes likely number in the thousands and are

thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or appropriate by the Court).

77.    <u>Commonality and Predominance</u>. Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions affecting only individual class members. These common questions include:

(a)    Whether the panoramic sunroofs in the Class Vehicles have a propensity to spontaneously shatter;

(b)    Whether Toyota knew or should have known that its panoramic sunroofs have a propensity to spontaneously shatter, and if so, when Toyota discovered this;

(c)    Whether the knowledge of this propensity to shatter would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(d)    Whether Toyota failed to disclose to and concealed from potential customers the existence of the sunroofs' propensity to spontaneously shatter;

(e)    Whether Toyota breached its warranty obligations;

(f)    Whether the Court may enter an injunction requiring Toyota to notify owners and lessees about the panoramic sunroofs' propensity to spontaneously shatter;

(g)    Whether the Court may enter an injunction requiring Toyota to cease its practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

(h)    Whether Toyota had a duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Vehicles and the sunroof defect;

(i)    Whether Toyota's conduct, as alleged herein, violates the Magnuson-Moss

Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*;

(j)     Whether Toyota's conduct, as alleged herein, violates the consumer protection laws of California; and

(k)     Whether Toyota's conduct, as alleged herein, entitles Plaintiff and the Class Members to restitution under the laws of their respective states.

78.     Typicality. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased or leased Class Vehicles with panoramic sunroofs that have a propensity to spontaneously shatter, giving rise to substantially the same claims. As illustrated by class member complaints, some of which are excerpted above, each vehicle model included in the proposed class definitions has a panoramic sunroof with the same Defect.

79.     Adequacy. Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

80.     Superiority. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Toyota economically feasible. Even if Class Members themselves could afford individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective sunroofs, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

81.    In the alternative, the proposed classes may be certified because:

(a)    the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Toyota;

(b)    the prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members, or which would substantially impair their ability to protect their interests; and

(c)    Toyota acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

### VII.  TOLLING OF THE STATUTES OF LIMITATIONS

82.    <u>Discovery Rule</u>. Plaintiff's and Class Members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneous failure. While Toyota knew, and concealed, the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous failure, Plaintiff and Class Members could not and did not discover this fact through reasonable diligence.

83.    <u>Active Concealment Tolling</u>. Any statutes of limitations are tolled by Toyota's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from the Defect. Toyota had a duty to disclose this defect and its consequent performance and safety problems to Plaintiff and Class Members because Toyota had knowledge of this defect and the defect was not known to nor easily discoverable by Plaintiff and Class

Members.  Despite its affirmative duty to disclose the nature and existence of this defect, Toyota kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff and Class members. The details of Toyota's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff and Class Members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

84. Estoppel. Toyota was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Toyota knowingly, affirmatively, and actively concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Toyota's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff reasonably relied upon Toyota's active concealment. Based on the foregoing, Toyota is estopped from relying on any statutes of limitation in defense of this action.

85. Equitable Tolling. Toyota took active stops to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective panoramic sunroofs. The details of Toyota's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. However, Toyota's failure to disclose and active concealment of the defect amounts to bad faith and deception in and of itself. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Toyota fraudulently concealed its above-described wrongful

acts. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VIII.  CLAIMS FOR RELIEF

### COUNT 1

**Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*.**

**(Plaintiff individually and on behalf of the Nationwide class and, alternatively, on behalf of the California Class)**

86.    Plaintiff re-allege and incorporates by reference the preceding paragraphs as if fully set forth herein.

87.    The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

88.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

89.    Toyota is a "supplier" and "warrantor" within the meanings of 15 U.S.C. § 2301(4)-(5).

90.    Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

91.    Toyota provided a written warranty for each Class Vehicle. Toyota's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

92. Toyota breached the warranties by:

a.    Extending a 36 month/60,000 mile warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or

replace any part defective in material or workmanship at no cost to the owner or lessee;

      b.      Selling and leasing Class Vehicles with panoramic sunroofs that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

      c.      Refusing to honor the express warranties by not repairing or replacing the panoramic sunroofs free of charge.

93.     Plaintiff and Class Members own Class Vehicles that experienced spontaneous panoramic sunroof shattering during the period of warranty coverage.

94.     Despite Toyota's warranty, Toyota has not repaired or replaced these shattered panoramic sunroofs at no charge to the consumers. In fact, Toyota has denied claims made under its warranty(ies) by consumers whose Class Vehicle panoramic sunroof shattered.

95.     Toyota's breach of express warranty(ies) has deprived Plaintiff and Class Members of the benefit of the bargain.

96.     Plaintiff and Class Members have had sufficient dealings with either Toyota or its franchisees, representatives, and agents to establish any required privity of contract. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Toyota and its dealers and specifically of Toyota's express and implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements with the Class Vehicles. The warranty agreements were designed for and intended to benefit the consumers only.

97.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value

of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

98.    Toyota has been afforded reasonable opportunity to cure its breaches of warranty, including when Plaintiff called to request repairs of the defective panoramic sunroof on his vehicle.

99.    Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified Toyota, thus providing Toyota with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

100.    Toyota has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their vehicles for repair after their Class Vehicles' panoramic sunroofs spontaneously shattered.

101.    Resorting to any informal dispute settlement procedure or affording Toyota another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Toyota has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Toyota a reasonable opportunity to cure its breach of warranty(ies) is excused and/or has been satisfied.

102.    As a direct and proximate result of Toyota's warranty(ies) breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Toyota's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

**COUNT 2**

30

**Unjust Enrichment**

**(Plaintiff individually and on behalf of the Nationwide Class,
and alternatively, on behalf of the California Class)**

103.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

104.    As described above, Toyota sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. Toyota failed to disclose its knowledge of the sunroof defect and the defect's attendant risks-- at the point of sale or otherwise.

105.    Toyota unjustly charged and charges Plaintiff and Class Members for repairs and/or replacement of the defective panoramic sunroofs without disclosing that the defect is widespread and that the repairs do not address the root cause of the defect.

106.    As a result of its acts and omissions related to the defective sunroofs, Toyota obtained monies that rightfully belong to Plaintiff and Class Members.

107.    Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the defect, paid a higher price for their vehicles than those vehicles were worth. Toyota also received monies for vehicles that Plaintiff and Class Members would not have otherwise purchased had they been aware of the defect.

108.    It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

**COUNT 3**

**Violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.**

**(Plaintiff individually and on behalf of the California Class)**

109.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

110.    Toyota has violated and continues to violate California's UCL, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, and fraudulent business acts or practices.

111.    Toyota's acts and practices, alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL. In particular, Toyota sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the defect and the attendant risks of the defect at the point of sale or otherwise.

112.    Toyota's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq. for the reasons set forth below.

113.    Toyota's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Toyota knowingly concealed, continues to conceal, failed, and continues to fail to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers. Had Toyota disclosed that information, Plaintiff and Class Members would not have purchased Class Vehicles or would have paid significantly less for them. Furthermore, Toyota charges for repairs of and/or replacement parts for Plaintiff's and Class Members' shattered panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the defect.

114.    Toyota's conduct also constitutes unfair business practices for at least the following reasons:

(a)    The gravity of potential harm to Plaintiff and Class Members as a result of

Toyota's acts and practices far outweighs any legitimate utility of Toyota's conduct;

(b)     Toyota's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

(c)     Toyota's conduct undermines or violates stated policies underlying the UCL—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

115.    As a direct and proximate result of Toyota's business practices described herein, Plaintiff and Class Members suffered a foreseeable injury-in-fact and lost money or property because they purchased and paid for Class Vehicles that, had they known of the defect, they would not have purchased or, in the alternative, they only would have purchased for a lower amount.

116.    Plaintiff and Class Members are entitled to equitable relief, including an order directing Toyota to disclose the existence of the defect inherent in its panoramic sunroofs and to provide restitution and disgorgement of all profits paid to Toyota as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

**COUNT 4**

**Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.***

**(Plaintiff individually and on behalf of the California Class)**

117.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

118.    Toyota is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

119.    Plaintiff and members of the proposed California Class are "consumers" within the

meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

120.   Toyota's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective panoramic sunroofs, violate the CLRA for at least the following reasons:

(a)   Toyota represents that its vehicles with panoramic sunroofs had characteristics, values, or benefits which they do not have;

(b)   Toyota advertises its goods with intent not to sell them as advertised;

(c)   Toyota represents that its vehicles and panoramic sunroofs are of a particular standard, quality, or grade when they are not;

(d)   Toyota represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

(e)   Toyota represents that its goods have been supplied in accordance with a previous representation when they have not.

121.   As described herein, Toyota sold vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles are defective and pose a safety hazard, and Toyota failed to disclose its knowledge of its panoramic sunroof defect and further failed to disclose the attendant risks associated with that defect at the point of sale or otherwise. Toyota intended that Plaintiff and Class Members rely on this omission in deciding to purchase their vehicles.  Plaintiff and Class Members did in fact rely on said omission.

122.   Had Toyota adequately disclosed the defect inherent in its panoramic sunroofs, Plaintiff and Class Members would not have purchased their Class Vehicle or, in the alternative, they would have only been willing to pay less for their Class Vehicle. Furthermore, Toyota charged

Plaintiff and Class Members (and continues to charge) for the repair and/or replacement of defective panoramic sunroofs without disclosing that this spontaneous shattering problem is widespread and that the repairs do not address the root cause of the defect. Nor does Toyota disclose that the replacement part used in repairs is substantially identical to the original factory-installed panoramic sunroof, such that it may also spontaneously explode.

123.    Pursuant to the provisions of the CLRA, Plaintiff will give notice of the defect to Toyota and upon the expiration of the period described in Cal. Civ. Code Section 1782, subd. (d), Plaintiff will amend this Complaint to state a claim for damages under the CLRA.

**COUNT 5**

**Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790** *et seq.*

**(Plaintiff individually and on behalf of the California Class)**

124.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

125.    Class Vehicles are "consumer goods" and Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791. Toyota is also a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

126.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Toyota warranted that each Class Vehicle:

    (a)    would pass without objection in trade under the contract description;

    (b)    was fit for the ordinary purposes for which the Class Vehicle would be used; and

    (c)    conformed to the promises or affirmations of fact made on the container label.

127.    The Class Vehicles would not pass without objection in the automotive trade

35

COMPLAINT

because their panoramic sunroofs are inherently defective in that they have a propensity to spontaneously explode, shatter, or otherwise fail, making them unfit for the ordinary purpose for which the Class Vehicles are normally used.

128.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the panoramic sunroofs' propensity to spontaneously shatter and does not advise Plaintiff or Class Members of the existence of the defect.

129.    Toyota's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid for them.

130.    As a direct and proximate result of Toyota's conduct as described herein, Plaintiff and Class Members received goods in a condition that substantially impairs their value. Plaintiff and Class Members have been damaged by the diminished value of their Class Vehicles, among other ways.

131.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles. They are also entitled to all incidental and consequential damages resulting from Toyota's conduct, as well as reasonable attorneys' fees and costs.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the class request that the Court enter a judgment awarding the following relief:

A.    An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

B.      An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C.      An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.      An order requiring Toyota to adequately disclose and repair the defective panoramic sunroofs;

E.      An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed under the law;

F.      An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.      An order awarding such other and further relief as this Court may deem just and proper.

## X.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury all issues so triable under the law.

DATED: August 28, 2017.              Respectfully submitted,

*/s/ Deborah R. Rosenthal* __
Deborah R. Rosenthal (184241)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
drosenthal@simmonsfirm.com

COMPLAINT

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
Mitchell M. Breit
(*pro hac vice* to be submitted)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Jason Meyers
(*pro hac vice* to be submitted)
**SIMMONS HANLY CONROY LLC**
One Court Street
Alton, IL 62002
Telephone: (618) 259-2222
Facsimile:  (618) 259-2251
jmeyers@simmonsfirm.com

Gregory F. Coleman
(*pro hac vice* to be submitted)
Mark E. Silvey
(*pro hac vice* to be submitted)
Adam A. Edwards
(*pro hac vice* to be submitted)
Lisa A. White
(*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

**Attorneys for Plaintiff**

COMPLAINT